UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EUGENE R., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:20-cv-6052-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

I.   FACTUAL AND PROCEDURAL HISTORY

On June 22, 2018, plaintiff filed an application for SSI, alleging disability as of December 18, 2016. *See* Dkt. 18, Administrative Record ("AR"), p. 71. The application was denied on initial administrative review and on reconsideration. *See* AR 71. A hearing was held on August 28, 2019. *See* AR 216-44. In a decision dated October 30, 2019, the Administrative Law Judge (ALJ) determined plaintiff to be not disabled. *See* AR 74-87. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

ORDER - 1

1  Council, making the ALJ's decision the final decision of the Commissioner of Social

2  Security ("Commissioner"). *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481.

3        The ALJ found that plaintiff had the following severe impairments: degenerative

4  disc disease, lumbosacral radiculopathy, major depressive disorder, and generalized

5  anxiety disorder. AR 73. The ALJ found that plaintiff could not perform any past work

6  but then determined, based on plaintiff's residual functional capacity (RFC), that plaintiff

7  could perform work in the future – based on a Vocational Expert's assessment that a

8  significant number of jobs in the national economy would be possible for plaintiff to

9  perform, e.g.: Marker; Small Products Assembler; and Housekeeper. AR 80-82.

10       II.    DISCUSSION

11       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

12 denial of Social Security benefits if the ALJ's findings are based on legal error or not

13 supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

14 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

15 reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

16 *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

17       **A. The ALJ erred when evaluating the medical evidence.**

18       Plaintiff contends that the ALJ erred when evaluating the 2018 medical opinion

19 provided by Dr. Terilee Wingate, Ph.D. Dkt. 22 at 1, 4-10. Plaintiff also contends that the

20 Appeals Council should have found that an opinion provided by Dr. Wingate in 2020,

21 after the ALJ's decision, undermined the ALJ's decision. Dkt. 22 at 1, 10-13. In addition,

22 plaintiff challenges the ALJ's assessment of plaintiff's statements regarding his mental

23 health conditions and work-related mental health limitations. Dkt. 22 at 13-14.

24

25

ORDER - 2

Defendant contends that substantial evidence supports the ALJ's findings. Dkt. 23 at 3-13.

On May 14, 2018, Dr. Wingate reviewed records, interviewed, and conducted an examination of plaintiff. AR 647-654. Dr. Wingate diagnosed plaintiff with "major Depressive Disorder, recurrent, moderate"; and also with "Generalized Anxiety Disorder". AR 648. Dr. Wingate determined that plaintiff had a range of moderate impairments, and two marked impairments: first, that plaintiff showed marked impairment in his ability to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision", and second, marked impairment in his ability to "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." Dkt. 649. Regarding the overall severity of these impairments, Dr. Wingate rated plaintiff's impairments "marked" as a whole, and she also determined that the impairments would last more than 12 months with available treatment. AR 649-650.

On April 8, 2020 (after the ALJ issued a decision) Dr. Wingate reviewed the evaluation she had conducted in 2018. She again interviewed and examined plaintiff. AR 8-12. Dr. Wingate again found that plaintiff suffered from marked impairments, and that his impairment would last more than 12 months with available treatment; she diagnosed "Major Depressive Disorder, recurrent, moderate"; and "Generalized anxiety disorder with aspects of PTSD and panic". AR 10. Regarding the overall severity rating, Dr. Wingate again found plaintiff to have a marked impairment, and she found marked impairments in the same two areas described in the 2018 opinion, as well as a third area – "Maintain appropriate behavior in a work setting". AR 10.

Mental health clinical findings included, "depression has been worsening the past few weeks. . . .awakens frequently. . .energy is very low. He eats only one meal per day and he has lost 20 pounds in the past few months., , ,Feels worthless and hopeless. . . ." AR 9. With respect to anxiety, "a lot of memories of his violent father and a name or someone talking about a certain place will trigger memories of his father. Those memories trigger irritability and panic. . . . .His heart will race and he can't breathe." *Id.*

The Appeals Council found that Dr. Wingate's 2020 opinion did not relate to the period at issue (December 18, 2016 [the alleged onset date] to October 30, 2019 [the date of the ALJ's decision denying benefits]). AR 2, 68-86, 335-339. The Council did not exhibit this 2020 opinion. AR 2.

Plaintiff filed the claim on June 22, 2018, so the ALJ applied the 2017 regulations. *See* AR 71, 79; *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Commissioner contends the changes to these regulations have affected the legal standards previously articulated by the United States Court of Appeals for the Ninth Circuit. Dkt. 23 at 2-6. The government argues that this Court should abandon Ninth Circuit precedent and the only question for the Court to review, according to the government, is whether the medical opinion is persuasive in the sense that it may (or

ORDER - 4

may not) be supported and consistent with other evidence; and the Court would also review whether there is substantial evidence to support the ALJ's decision to reject or discount the medical provider's opinion.

The genesis of the "specific and legitimate" substantive legal standard is the case of *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983). In that case, the Ninth Circuit did not mention any regulations promulgated by the Social Security Administration (the regulations that set forth different ways of considering various types of doctor opinions were promulgated in 1991, 56 FR 36932-01, 1991 WL 142361). The Court reviewed precedent from other circuits and determined that an ALJ's decision rejecting or discounting a treating physician's opinion that conflicts with a physician who saw the patient only once, would need to meet the following substantive legal standard: The ALJ's findings would be upheld if they are based on reasons that are specific and legitimate. *Murray,* at 502. This "specific and legitimate" standard is in addition to the requirement of substantial evidence. *Id.*

The regulations applicable to cases filed before March 27, 2017, set out a hierarchy by which an ALJ would consider opinion evidence; more weight was generally given to the opinion of a treating doctor than to an examining doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. The Ninth Circuit mentioned those pre-March 27, 2017 regulations and found that its precedent in *Murray* setting forth legal standards for treating and examining doctors would be consistent with the C.F.R. provisions. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); 20 C.F.R. §§ 404.1527, 416.927. As discussed above, in 2017, the Commissioner revised agency regulations and removed language regarding the hierarchy of medical opinions.

The Ninth Circuit has not yet considered the 2017 regulations, or whether the change in regulations will cause the Court of Appeals to reevaluate its holdings regarding the legal standards of "clear and convincing" or "specific and legitimate" reasons for an ALJ to reject medical opinions. In this case, the only issue is whether the legal standard that applies when an examining doctor's opinion is contradicted by a different non-examining doctor -- the "specific and legitimate" reasons standard – has been overturned by the regulations that apply after March 27, 2017. The Ninth Circuit has repeatedly held that an ALJ must have specific, legitimate reasons supported by substantial evidence in order to reject or discount the opinion of an examining doctor if the opinion is contradicted by another doctor's opinion. *See Lester*, 81 F.3d at 830–31; *Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1198-99 (9th Cir. 2008). The "specific and legitimate reasons" language used by the Ninth Circuit in precedent is an appellate standard – established in *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983).

Therefore, the ALJ's explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but

rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ does not point to any specific inconsistencies, but merely states a conclusion. AR 80.

The ALJ erred in rejecting Dr. Wingate's opinions as relying too heavily on plaintiff's self-reports. First, mental health evaluations must depend on measures that may be considered subjective in other contexts, such as the patient's self-reports, because "'unlike a broken arm, a mind cannot be x-rayed.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049.

And, as discussed below, the ALJ erred in rejecting plaintiff's testimony. The ALJ therefore did not reasonably conclude Dr. Wingate's opinions were flawed for relying on plaintiff's reports.

Moreover, Dr. Wingate did not solely rely on plaintiff's self-reports but conducted a clinical interview and mental status exam. *See* AR 647-654. These are both "objective measures and cannot be discounted as 'self-report.'" *Buck*, 869 F.3d at 1049. The ALJ thus erred in rejecting Dr. Wingate's opinions as too heavily reliant on plaintiff's self-reports. In turn, the ALJ failed to provide any valid reasons for rejecting Dr. Wingate's 2018 opinions, and the Appeals Council erred by failing to exhibit the 2020 opinions of Dr. Wingate, and failing to recognize that in 2020, Dr. Wingate found plaintiff's

ORDER - 7

symptoms were significantly more onerous. In the 2020 opinion, Dr. Wingate found aspects of PTSD and panic, and also determined that plaintiff's behavior was markedly impaired and would likely be disruptive in the workplace. AR 10.

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra*, 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, if the ALJ had properly evaluated the medical evidence, and if the Appeals Council had remanded the 2020 opinion of Dr. Wingate for consideration by the ALJ, the ALJ might have re-evaluated the RFC and may have included the marked limitations found by Dr. Wingate in both the 2018 and 2020 reports of her examinations, and thereby may have found plaintiff to be disabled.

The hypothetical posed to the Vocation Expert would potentially need to be changed based on the ALJ's re-evaluation of the medical evidence. Potentially, this would include additional components such as an increased number of absences, more frequently being off-task, and needing additional breaks -- consistent with marked limitations noted in 2018 and 2020 by Dr. Wingate. And, because plaintiff's subjective claims about symptoms of back pain and mental health conditions were also erroneously discounted by the ALJ, the medical evidence (that depended in part on plaintiff's statements about his symptoms) should be considered in tandem with plaintiff's statements about subjective symptoms.

1         **B.  The ALJ erred when evaluating plaintiff's subjective claims**

2         Plaintiff argues the ALJ erred by rejecting plaintiff's subjective claims because
3 the ALJ mistakenly determined that plaintiff had successfully been treated for back pain
4 and mental health conditions, and the ALJ did not fully consider the side effects of
5 plaintiff's medications. Dkt. 22 at 14.

6         In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*
7 *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether
8 there is objective medical evidence of an underlying impairment that could reasonably
9 be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763
10 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and there is no evidence of
11 malingering, the second step allows the ALJ to reject the claimant's testimony of the
12 severity of symptoms if the ALJ can provide specific findings and clear and convincing
13 reasons for rejecting the claimant's testimony. *Id.*

14        An ALJ may reject a claimant's symptom testimony when it is contradicted by the
15 medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161
16 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the
17 ALJ must explain how the medical evidence contradicts the claimant's testimony. *See*
18 *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

19        The ALJ, addressing plaintiff's claims of mental impairment, rejected plaintiff's
20 testimony because the ALJ determined that plaintiff received little treatment and
21 endorsed only mild symptoms. AR 77-79. The ALJ erred in reaching these conclusions.
22 The ALJ did not accurately represent the record when stating plaintiff reported only mild
23 symptoms. *See* AR 939, treatment notes dated 7-31-2017 (new prescription for

buprorion to treat plaintiff's depression); AR 865 (noting in early 2018 that depression is worse – ARNP Thomas states that plaintiff's depression is associated with his chronic back pain); AR 860 (increasing the dosage of bubroprion in early 2018 to address further symptoms of depression such as uncontrolled anger).

Some medical records indicate periods when plaintiff's depression responded well to the medication. AR 834 (ARNP Thomas notes on 7-6-2018 that "medication for depression is helping). But an ALJ "cannot simply pick out a few isolated instances" of improving health that support his conclusion; the ALJ must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

Regarding back pain, plaintiff endorsed moderate and more substantial symptoms on multiple occasions. *See, e.g.*, AR 1175 (emergency room records dated 12-9-2016, the day after plaintiff fell and injured his back); AR 485-762,1020-1030, (pain clinic records, and records from plaintiff's primary medical provider, dated 9-29-2017 through 9-4-2019, showing that plaintiff was taking opiates for serious back pain, and had several injections into his spine to address acute pain in his back, glutes, legs; also indicating that he suffered from drug side effects; at times plaintiff attempted to return to work but then pain increased and he stopped working; and onset of mental health symptoms in reaction to pain, and negative emotional and psychological reaction to being unable to work). The ALJ thus erred in rejecting plaintiff's allegations of mental impairment based on his receipt of minimal treatment and endorsement of only mild symptoms; the ALJ's decision rejecting plaintiff's symptom statements was not based on substantial evidence.

### C. **Issues raised in plaintiff's reply brief: should the Court reverse and remand this case due to Constitutional violations?**

Plaintiff argues that the statutory restriction on the President's removing the Social Security Administration Commissioner was unconstitutional under *Collins v. Yellen*, and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, as interpreted by the Office of Legal Counsel. *Constitutionality of the Commissioner of Social Security's Tenure Protection,* 45 Op. O.L.C. __ (July 8, 2021) https://www.justice.gov/olc/file/1410736/download. Plaintiff relies on *Collins v. Yellen,* 141 S. Ct. 1761 (2021), *Seila Law LLC v. Consumer Fin. Prot. Bureau*, , 140 S.Ct. 2183 (2020), and *Lucia v. SEC,* 138 S.Ct. 2044 (2018) and contends the Court is required to remand the case for a de novo agency hearing, because the ALJ was not acting pursuant to properly delegated authority, therefore the ALJ did not have legal authority to review the case and make a decision. Dkt. 27 at 1-5. Plaintiff argues that he has been prejudiced by alleged bias of the former Commissioner Saul, as described by the President of the United States upon removing Saul from office. Dkt. 27 at 3.

The defendant has not requested leave to file a surreply. The Court finds that, even if plaintiff is allowed to raise this claim for the first time in his reply brief, the plaintiff lacks standing.

Because the Court is reversing and remanding for other reasons, on remand the plaintiff will have an opportunity to raise any concerns about bias at the administrative level if plaintiff believes the ALJ is biased. See 20 C.F.R. § 404.940; *Schink v. Commissioner of Social Security,* 935 F.3d 1245, 1258-1259 (11th Cir. 2019).

ORDER - 11

Because a de novo hearing is ordered on remand, and the former Commissioner Andrew Saul is no longer appointed to that office, plaintiff's separation of powers claim would appear to be moot. And, for the reasons described below, plaintiff lacks standing to raise the separation of powers claim.

If a separation of powers violation occurred as a result of the 42 U.S.C. § 902(a)(3) statutory language, then plaintiff has a right, shared by everyone in this country, to bring a challenge the under separation of powers doctrine only if he has Article III standing to invoke the Court's jurisdiction under *Collins v. Yellen,* 141 S. Ct. 1761 (2021), and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183 (2020). To have standing, plaintiff must show he is an aggrieved party – he must establish there is a nexus between the Constitutional violation and an unlawful action of the ALJ in her specific case, and that she has a compensable injury to be redressed. *Collins,* 141 S. Ct. at 1787, 1788, n.23, and n.24.

Plaintiff has not made any showing of how this alleged constitutional violation caused any compensable harm in his specific situation. *Collins,* at 1779 ("plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561)). Plaintiff is not required to show that the ALJ would have decided his appeal differently and awarded benefits -- but for the statutory issue identified as a potential separation of powers violation by the Office of Legal Counsel. *Constitutionality of the Commissioner of Social Security's Tenure Protection,* 45 Op. O.L.C. __ (July 8, 2021) https://www.justice.gov/olc/file/1410736/download. *Seila Law LLC v. Consumer Fin.*

*Prot. Bureau*, 140 S.Ct. 2183, 2196 (2020) (in order to show traceability, the litigant is not required to show the U.S. Government's conduct would have been different if the Government had acted with proper authority under the Constitution).

Yet, plaintiff must show compensable harm. *See Decker Coal Company v. Pehringer,* 8 F.4th 1123, 1137 (9th Cir. 2021) ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.")

Plaintiff argues that all actions taken by Commissioner Saul – including all actions taken by ALJ's who served during his tenure – would be void because of the allegedly unconstitutional removal provision. Dkt. 27 at 3-4. The Court in *Collins* rejected this argument. *Collins,* at 1779.

In *Collins*, the plaintiffs showed they had property rights that were injured, and the injury was traceable to the FHFA's actions (actions pursuant to a decision made during the Director's tenure and implemented for many years thereafter), and a decision in plaintiff's favor could lead to an award of relief sought by plaintiff; by contrast, in this case, plaintiff cannot meet any of the three-part criteria to establish Article III standing. Under the Court's holding, in order to establish Article III standing, plaintiff is required to show that he suffered compensable harm as a result of the Constitutional separation of powers violation. *Collins v. Yellen,* 141 S. Ct. at 1787, 1788 n.23, and n.24; *see Decker Coal Company v. Pehringer,* 8 F.4th 1123, 1136-1138 (9th Cir. 2021) (plaintiff brought a separation of powers challenge to the Department of Labor ALJ's authority under *Collins v. Yellen* and *Seila Law* – but failed to show any indication that the ALJ took

unlawful action, nor did plaintiff make any showing of a nexus between the allegedly unconstitutional removal provisions and plaintiff's specific case, nor any compensable harm; the Court declined to remand for a new hearing).

Because plaintiff has not shown any compensable harm fairly traceable to the actions of former Commissioner Saul, under *Collins v. Yellen,* 141 S. Ct. 1761,1788 (2021), the plaintiff's situation is distinguishable from the plaintiff's claims in *Collins*; plaintiff has failed to establish standing and the Court need not address the plaintiff's additional arguments, and the Court does not request additional briefing from the defendant.

### D. The case is remanded for further proceedings.

Generally, when the Social Security Administration commits harmful error concerning the claimant's appeal of a denial of their application, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). After concluding that an ALJ has harmfully erred when considering such medical evidence or plaintiff's testimony, the Court next should "turn to the question whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citations omitted). When looking at this issue, the Court should consider if the record is free from relevant conflicts. *See id.*

Based on a review of the record, the Court concludes that the record is not free of ambiguity, such as conflicts in the medical evidence. Therefore, this matter should be

ORDER - 14

reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits.

### III. CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the Commissioner shall allow plaintiff a de novo hearing, take additional evidence as necessary to fully clarify the record, must consider both opinions of Dr. Wingate. AR 8-12 (2020 opinion) AR 647-654 (2018 opinion), and re-evaluate plaintiff's RFC to determine whether plaintiff does, or does not, meet the criteria for establishing a disability for which benefits should be awarded.

Dated this 6th day of December 2021

Theresa L. Fricke
United States Magistrate Judge